FILED

2010 MAR 30  AM 11: 22

CLERK U.S.
CENTRAL DIST...
SANTA ANA

BY:_____

1  **THE WESTON FIRM**
2  GREGORY S. WESTON (239944)
   JACK FITZGERALD (257370)
3  888 Turquoise Street
   San Diego, CA  92109
4  Telephone:  858 488 1672
5  Facsimile:   480 247 4553
   greg@westonfirm.com
6  jack@westonfirm.com
7
8  **BECK & LEE BUSINESS TRIAL LAWYERS**
9  JARED H. BECK (233743)
   ELIZABETH LEE BECK (233742)
10 Courthouse Plaza Building
11 28 West Flagler Street, Suite 555
   Miami, FL 33130
12 Telephone:  305 789 0072
13 Facsimile:   786 664 3334
   jared@beckandlee.com
14 elizabeth@beckandlee.com
15 Counsel for Plaintiffs and the Proposed Classes

16                    **UNITED STATES DISTRICT COURT**

17                    **CENTRAL DISTRICT OF CALIFORNIA**

18 EILEEN PEVIANI and VICTOR            Case No: CV 10-2303 CBM (VBKx)
   GUTTMANN, on behalf of themselves
19 and all others similarly situated,
                                        Pleading Type: Class Action
20
          Plaintiffs,
21                                       **COMPLAINT FOR VIOLATIONS**
                                         **OF THE LANHAM ACT, UNFAIR**
22             v.                        **COMPETITION LAW, FALSE**
                                         **ADVERTISING LAW, CONSUMER**
23 HOSTESS BRANDS, INC.,                 **LEGAL REMEDIES ACT, AND**
                                         **MISSOURI MERCHANDISE**
24         Defendant.                    **PRACTICES ACT**
25
26                                       DEMAND FOR JURY TRIAL
27

1  Plaintiffs Eileen Peviani and Victor Guttmann ("Plaintiffs"), on behalf of

2  themselves, all others similarly situated, and the general public, by and through

3  undersigned counsel, hereby sue Defendant Hostess Brands, Inc. ("Hostess") and,

4  upon information and belief and investigation of counsel, allege as follows:

5  **JURISDICTION AND VENUE**

6  1.  This Court has original jurisdiction over this action under 28 U.S.C.

7  §1331 and 15 U.S.C. §1121.

8  2.  This Court also has original jurisdiction under 28 U.S.C. §1332(d)(2)

9  (The Class Action Fairness Act) because the matter in controversy exceeds the sum

10  or value of $5,000,000 exclusive of interest and costs and more than two-thirds of

11  the members of each Class reside in states other than the state of which Defendant

12  is a citizen.

13  3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 because

14  Plaintiffs reside in and suffered injuries as a result of Defendant's acts in this

15  district, many of the acts and transactions giving rise to this action occurred in this

16  district, and Defendant (1) is authorized to conduct business in this district and has

17  intentionally availed itself of the laws and markets of this district through the

18  promotion, marketing, distribution, and sale of its products in this district; (2)

19  resides in this district; and (3) is subject to personal jurisdiction in this district.

20  **PARTIES**

21  4.  Defendant Hostess Brands, Inc. is a Delaware corporation with its

22  principal place of business in Missouri. Hostess is the manufacturer of Hostess 100

23  Calorie Packs Chocolate Cake with Creamy Filling, Hostess 100 Calorie Packs

24  Lemon Golden Cake with Creamy Filling, Hostess 100 Calorie Packs Twinkie

25  Bites, Hostess 100 Calorie Packs Strawberry Cake with Cream Cheese Icing and

26  Creamy Filling, Hostess 100 Calorie Packs Carrot Cake with Cream Cheese Icing

27  and Creamy Filling, and Hostess 100 Calorie Packs Cinnamon Streusel Coffee

1

Cakes (collectively, the "Hostess Trans Fat Products").

5.     Plaintiffs are residents California who repeatedly purchased the Hostess Trans Fat Products for their own use in various California stores during the class period defined below.

## INTRODUCTION

6.     Hostess falsely markets the Hostess Trans Fat Products as "0 Grams of Trans Fat" even though they contain dangerous levels of artificial trans fat, a toxic food additive banned in many parts of the world.

7.     Plaintiffs seek an order that compels Hostess to (1) cease marketing the Hostess Trans Fat Products as "0 Grams of Trans Fat," (2) conduct a corrective advertising campaign, (3) restore the amounts by which it was unjustly enriched, (4) pay damages as allowed by the CLRA and MPA, and (5) destroy all misleading and deceptive materials and products.

## SUMMARY OF THE STRONG EVIDENCE OF HEALTH DANGERS OF ARTIFICIAL TRANS FAT

**Artificial trans fat is a manufactured food product whose basic chemical structure is different from natural fat molecules.**

8.     Artificial trans fat is manufactured in an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400 degrees Fahrenheit in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[1]

9.     The resulting product is known as partially hydrogenated oil ("PHVO"), and is the main source of trans fat in the American diet.[2]

---

[1] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).

[2] *See* Mozaffarian, 354 New Eng. J. Med. at 1608.

10.     PHVO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann.

11.     Trans fat molecules chemically differ from the natural fat molecules in other food products. Natural fat, except the trace amounts of natural trans fat found in milk and the meat of ruminant animals, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen atoms on the same side on the carbon chain ("cis fat"). Trans fat, however, has double bonds on opposite sides of its carbon chain.



CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND MISSOURI MERCHANDISE PRACTICES ACT



12. Like cis fat, PHVO is manufactured from lower-cost legumes,[3] while saturated fat is derived from relatively expensive animal and tropical plant sources.[4]

13. Like natural saturated fat, PHVO has a long shelf life, physical solidity, and flavor stability. The industrial process that adds hydrogen ions to normal vegetable oil improves food texture and permits food products to withstand heavy mechanical processing and high temperatures.[5]

14. Artificial trans fat does not exist in nature, and the human body has not evolved to digest it. Instead, it is incorporated into the body's cells, where it persists and damages health for years. The same unusual and unnatural chemical structure that gives artificial trans fat properties attractive from an industrial

---

[3] e.g., corn oil, soybean oil, peanut oil

[4] e.g., butter, cream, tallow, coconut oil

[5] *See* Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/qatrans2.html#fn.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND MISSOURI MERCHANDISE PRACTICES ACT

perspective makes it highly toxic to human health.

**Trans fat causes cardiovascular disease, type 2 diabetes, and cancer.**

- **Heart Disease**

15.   Trans fat raises the risk of heart disease more than any other known nutritive product.[6]

16.   In a joint Dietary Guidelines Advisory Committee Report, the U.S. Department of Health and Human Services and the U.S. Department of Agriculture recognized **"[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."**[7]

17.   Food products with trans fat harm the heart by "rais[ing] the concentration of the most dangerous form of serum cholesterol (LDL cholesterol)" and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[8]

18.   The American Heart Association notes **"trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."**[9]

19.   After an extensive evaluation of the scientific literature on the trans fat/CHD connection, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range

---

[6] Mozaffarian, 354 New Eng. J. Med. at 1603.

[7] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[8] *Id.*

[9] Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.

of test conditions and across different geographical regions and populations…the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[10]

20.    Removing 2 percent of daily calories from trans fat from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,0000 premature deaths annually."[11]

21.    A study on the impact of trans fatty acids on heart health provides evidence that:

[E]ven the lower estimates from the effects [of PHVO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[12]

22.    Since "the adverse effect of trans fatty acids is stronger than that of saturated fatty acids," saturated fat consumption would need to be reduced by 10 percent of caloric intake to have the same impact.[13]

23.    "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[14]

24.    By raising LDL levels and lowering HDL levels, trans fat causes a

---

[10] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling.

[11] Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

[12] W.C. Willett *et al., Trans Fatty Acids: Are the Effects only Marginal?* 84 Am. J. Pub. Health  722, 723 (1994).

[13] Mozaffarian, 354 New Eng. J. Med. at 1609.

[14] Mozaffarian, 354 New Eng. J. Med. at 1611.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND MISSOURI MERCHANDISE PRACTICES ACT

wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

25.    Danish researchers found healthy men and women who maintained a high-trans fat diet had 21 percent lower protective HDL levels and 29 percent lower flow-mediated vasodilation ("FMD") than those on a high-saturated fat diet. Since FMD measures the percent increase between the diameter of the artery at ordinary and at maximum dilation, low FMD is "a risk marker of coronary heart disease.[15]

26.    Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue, strongly linking long-term consumption of trans fat to heart disease.[16]

27.    By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by trans fat intake, another study published in the American Heart Association's *Circulation* found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after controlling for a variety of medical and lifestyle risk factors.[17]

---

[15] Nicole M. De Roos *et al*., *Replacement of Dietary Saturated Fatty Acids by Trans Fatty Acids Lowers Serum HDL Cholesterol and Impairs Endothelial Function in Healthy Men and Women*, 21 Am. Heart Assoc. 1233,  1233-37 (2001).

[16] Peter M. Clifton *et al*., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. of Nutrition 874, 874-79 (2004).

[17] Rozenn N. Lemaitre *et al*., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

- **Diabetes**

28. Artificial trans fat causes type 2 diabetes.[18]

29. A 14-year study of 84,204 women found that for every 2 percent increase in energy intake from trans fat, the relative risk of type 2 diabetes was 1.39. In other words, each 2 percent increase of calories from artificial trans fat increases the risk of type 2 diabetes by 39 percent.[19]

- **Cancer**

30. Trans fat is a known carcinogen shown to cause breast, prostate, and colorectal cancer.

31. A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in the lowest.[20]

32. In a 25-year study of 14,916 U.S. physicians, the doctors in the highest quintile of trans fat intake had over a 100% greater risk of developing prostate cancer than the doctors in the lowest quintile.[21]

33. A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate

---

[18] Am. Heart Ass'n., *Trans Fat Overview*.

[19] Jorge Salmeron *et al*., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. of Clinical Nutrition 1019, 1023 (2001).

[20] Véronique Chajès *et al*., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. of Epidemiology 1312, 1316 (2008).

[21] Jorge Chavarro *et al*., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006).

cancer than those in the lowest.[22]

34.   A 600-person study found an 86 percent greater risk of colorectal cancer in the highest trans fat consumption quartile.[23]

35.   A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[24]

36.   The serious health conditions caused by trans fat consumption only occur from artificial trans fat, not the trace natural trans fat found in ruminant sources:

> Of four prospective studies evaluating the relation between the intake of trans fatty acids from ruminants and the risk of CHD, none identified a significant positive association, whereas three identified nonsignificant trends toward an inverse association. . . . [T]he sum of the current evidence suggests that the public health implications of consuming trans fats from ruminant products are relatively limited.[25]

**The grave, concrete risks of artificial trans fat consumption far outweigh any conceivable benefits of Hostess's conduct.**

37.   There is no health benefit to artificial trans fat consumption and "no

---

[22] Xin Liu *et al.*, *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).

[23] L.C. Vinikoor *et al.*, *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

[24] Evropi Theodoratou *et al.*, *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. of Epidemiology 181 (2007).

[25] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.

9

1  safe level" of artificial trans fat intake.[26]

2      38.    According to the established consensus of the scientific community,

3  consumers should keep their consumption of trans fat "as low as possible."[27]

4      39.    As Dariush Mozaffarian, M.D., notes in the New England Journal of

5  Medicine:

6          [F]rom a nutritional standpoint, the consumption of trans fatty

7          acids results in considerable potential harm but no apparent

           benefit. . . . Thus, complete or near-complete avoidance of

8          industrially produced trans fat—a consumption of less than 0.5

9          percent of the total energy intake—may be necessary to avoid

10         adverse effects and would be prudent to minimize health risks.[28]

11 **<u>Trans fat is so inherently dangerous that it is being banned in an increasing</u>**

12 **<u>number of American states and European countries.</u>**

13     40.    In 2008, California became the first state to ban all restaurant food

14 with  artificial  trans  fat,  a  law  affecting  approximately  88,000  eating

15 establishments. Trans fats are now banned in restaurants as of January 1, 2010 and

16 will be removed from retailers starting January 1, 2011.

17     41.    New York City banned all trans fat in its 20,000 food establishments

18 in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and

19 Montgomery County, Maryland.

20     42.    A 2004 Danish law restricted all foods to under 2 percent of calories

21

22 [26] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy,
   Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids
23 (2005).

24 [27] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy,
   Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids 424
25 (2005).

26 [28] Mozaffarian, 354 New Eng. J. Med. at 1609.

27

1   from trans fat. Switzerland imposed the same restriction in 2008.[29]

2       43.    After conducting a study on the impact of Denmark's trans fat ban,

3   researchers concluded the change "did not appreciably affect the quality, cost or

4   availability of food" and did not have "any noticeable effect for the consumers."[30]

5       44.    In 2006, a trans fat task force co-chaired by Health Canada and the

6   Heart and Stroke Foundation of Canada recommended capping trans fat content at

7   2 percent of calories for tub margarines and spreads and 5 percent for all other

8   foods. On September 30, 2009, British Columbia became the first province to

9   impose these rules on all restaurants, schools, hospitals, and special events.[31]

10  **The Hostess Trans Fat Products are deceptively labeled and contain a**

11  **material omission.**

12      45.    As shown in the photos that follow, the front labels of the Hostess

13  Trans Fat Products advertise "0 Grams of Trans Fat." But the Hostess Trans Fat

14  Products contain partially hydrogenated oils. As described in detail above, the

15  process of partial hydrogenation creates artificial trans fat. Hostess's claim that the

16  Hostess Trans Fat Products contain "0g" trans fat is thus literally false because

17  they all contain partially hydrogenated oils. The actual content of trans fat per

18  serving is deceptively omitted.

19

20  [29] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent

21  (UK), June 10, 2008.

22  [30] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* High Levels of Industrially

23  Produced Trans Fat in Popular Fast Food, 354 New Eng. J. Med. 1650, 1652

    (2006).

24  [31] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy

25  Living and Sport Press Release (2009), *available at*

    http://www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-

26  000315.htm.

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27





CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW,
FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND MISSOURI MERCHANDISE
PRACTICES ACT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27





13





CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND MISSOURI MERCHANDISE PRACTICES ACT

## CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this action on behalf of themselves and all others similarly situated in accordance with Rule 23 of the Federal Rules of Civil Procedure.

47.     The Classes are defined as:

Restitution and Damages Class:

All persons (excluding officers, directors, and employees of Hostess) who purchased, on or after January 1, 2000, one or more of the Hostess Trans Fat Products in the United States for their own use rather than resale or distribution.

Injunctive Relief Class:

All persons (excluding officers, directors, and employees of Hostess) who commonly purchase or are in the market for one or more Hostess Trans Fat Products in the United States for their own use rather than resale or distribution.

48.     Questions of law and fact common to Plaintiffs and the Classes include:

a.   Whether Hostess contributed to, committed, and/or is responsible for the conduct alleged herein;

b.   Whether Hostess's conduct constitutes the violations the Lanham Act;

c.   Whether Hostess's conduct constitutes violations of the Unfair Competition Law;

d.   Whether Hostess's conduct constitutes violations of the False Advertising Law;

e.   Whether Hostess's conduct constitutes violations of the Consumer Legal Remedies Act;

f.   Whether Hostess's conduct constitutes violations of the Missouri Merchandise Practices Act;

15

g. Whether Hostess acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein;

h. Whether Class members are entitled to restitution; and

i. Whether Class members are entitled to injunctive relief.

49.    By purchasing and/or consuming the Hostess Trans Fat Products, all Class members were subjected to the same wrongful conduct.

50.    Plaintiffs' claims are typical of the Classes. Plaintiffs will fairly and adequately protect the interests of the Classes, have no interests that are incompatible with the interests of the Classes, and have retained counsel competent and experienced in class litigation.

51.    The Classes are sufficiently numerous, as they each include hundreds of thousands of individuals throughout the United States who have purchased, consumed, and/or been in the market for the Hostess Trans Fat Products.

52.    Class representation is superior to other options for resolution of this controversy. The relief sought for each Class member is small. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

53.    Hostess has acted on grounds applicable to the Classes, thereby making appropriate final injunctive relief or declaratory relief concerning the Classes as a whole.

54.    Questions of law and fact common to the Classes predominate over any questions affecting only individual members.

**Hostess fraudulently concealed the health hazards of consuming the Hostess Trans Fat Products.**

55.    Hostess has tolled any applicable statute of limitations by affirmatively concealing and publically misrepresenting its violations of law as described herein. A reasonable consumer would have relied on the deceptive and

16

1 | false claims made on the packaging of Hostess products, and through the exercise
2 | of reasonable diligence would not have discovered the violations alleged herein
3 | because Hostess actively and purposefully concealed the truth regarding its
4 | products.

5 | **FIRST CAUSE OF ACTION**

6 | **False Advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq.***

7 | 56.    Plaintiffs reallege and incorporate the allegations elsewhere in the
8 | Complaint as if set forth in full herein.

9 | 57.    Hostess has made and distributed, in interstate commerce and in this
10 | District, products that make false or misleading statements of fact regarding their
11 | content. All of the Hostess Trans Fat Products were placed into interstate
12 | commerce by Hostess and are sold throughout the country and this District.

13 | 58.    The Hostess Trans Fat Products possess on their labels the false and
14 | misleading statement that they contain "0 Grams of Trans Fat."

15 | 59.    Hostess's false and misleading statements and omissions actually
16 | deceive, or have a tendency to deceive, any reasonable consumer. The deception is
17 | material in that it is likely to influence the purchasing decision of a reasonable
18 | consumer.

19 | 60.    Plaintiffs seek an order directing Hostess to destroy all misleading and
20 | deceptive advertising materials and products in accordance with 15 U.S.C. § 1118.

21 | 61.    Plaintiffs seek an injunction under 15 U.S.C. § 1116 restraining
22 | Hostess, its agents, employees, representatives, and all persons acting in concert
23 | with Hostess from engaging in further acts of false advertising; and ordering
24 | removal of all of Hostess's false advertisements and products possessing
25 | misleading statements or omissions of fact.

26
27

## SECOND CAUSE OF ACTION

**Violations of the California Unfair Competition Law, Bus. & Prof. Code**

**§ 17200 *et seq.***

62.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

63.    Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

64.    The acts, omissions, misrepresentations, practices, and non-disclosures of Hostess as alleged herein constitute "unlawful" business acts and practices in that Hostess's conduct violates the Lanham Act, the False Advertising Law and the Consumer Legal Remedies Act.

65.    The acts, omissions, misrepresentations, practices, and non-disclosures of Hostess as alleged herein constitute "unfair" business acts and practices in that Hostess's conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Hostess's conduct outweighs any conceivable benefit of such conduct.

66.    The acts, omissions, misrepresentations, practices, and non-disclosures of Hostess as alleged herein constitute "fraudulent" business acts and practices in that Hostess's conduct has a tendency to deceive the Class and the general public.

67.    In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Hostess from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

68.    Plaintiffs further seek an order for the disgorgement and restitution of all monies acquired through the sale of the Hostess Trans Fat Products through acts of unlawful, unfair, and/or fraudulent competition.

18

**THIRD CAUSE OF ACTION**

**Violations of the California False Advertising Law, Bus. & Prof. Code**

**§ 17500 *et seq.***

69.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

70.     In violation of Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Hostess Trans Fat Products without the knowledge that they contain toxic artificial trans fat.

71.     Hostess knew or reasonably should have known that the labels on the Hostess Trans Fat Products are false and misleading.

72.     As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Hostess was unjustly enriched.

**FOURTH CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act, Civ. Code § 1750 *et seq.***

73.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

74.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

75.     Hostess's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

     a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

     b.   § 1770(a)(7): representing that goods are of a particular

19

standard, quality, or grade if they are of another.

   c. § 1770(a)(9): advertising goods with intent not to sell them as advertised.

   d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

76.    In compliance with Civ. Code § 1782, Plaintiffs sent Hostess written notice of their claims via Certified Mail. Hostess received this notice on February 1, 2010 and failed to respond to Plaintiffs' demand and rectify their conduct on behalf of the Plaintiff Classes within 30 days of receiving Plaintiffs' § 1782 notice.

77.    Hostess's failure to respond is ineffective to avoid the range of remedies available to Plaintiffs and the Classes under the CLRA. Hostess failed to (1) rectify its conduct and (2) offer to compensate Plaintiffs and the Classes for out-of-pocket expenses, interest, and damages incurred as a result of purchasing the Hostess Trans Fat Products, which would not have been purchased had Hostess disclosed their actual *trans* fat content and pose serious health consequences for those who consume them when used as intended.

78.    In accordance with Civ. Code §1780(a)(2), Plaintiffs and the Classes are entitled to (1) an award of damages; (2) an order enjoining the wrongful acts and practices of Hostess; and (3) an award of restitution, costs, attorneys fees, and any other relief deemed necessary, appropriate, and proper by the court pursuant to Civ. Code § 1780.

//

//

//

//

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, CONSUMER LEGAL REMEDIES ACT, AND MISSOURI MERCHANDISE PRACTICES ACT

**FIFTH CAUSE OF ACTION**

**Violation of the Missouri Merchandise Practices Act, Mo. Rev. Stat.**

**§ 407.010 *et seq.***

79.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

80.    Hostess is a "person" engaged in the "trade," "commerce" or "sale" of the Hostess Trans Fat Products, and the Hostess Trans Fat Products are "merchandise," as those terms are defined in the Merchandise Practices Act at Mo. Rev. Stat. § 407.010.

81.    During the Class Period, Hostess manufactured and distributed the Hostess Trans Fat Products using false, misleading, and deceptive sales, marketing, advertising, labeling and packaging tactics.

82.    Hostess had actual knowledge of the dangers of the Hostess Trans Fat Products, and the false, misleading and deceptive sales, marketing, advertising, labeling and packaging tactics used with respect to the Hostess Trans Fat Products.

83.    By the acts complained of herein, Hostess employed deceptions, frauds, false pretenses, false promises, misrepresentations and unfair practices, and concealments and omissions of material facts.

84.    Hostess's unlawful acts occurred in connection with the sale or advertisement of merchandise in trade or commerce.

85.    Hostess's unlawful acts resulted in ascertainable loss of money of Plaintiffs and members of the Classes.

86.    Plaintiffs and members of the Classes primarily purchased the Hostess Trans Fat Products for personal, family or household purposes.

87.    Plaintiffs and members of the Classes seek damages, punitive damages, attorneys fees and costs, injunctive relief, and restitution, pursuant to Mo. Rev. Stat. § 407.025.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment and relief against Hostess as follows:

A.     Declaring this action to be a proper class action.

B.     An order enjoining Hostess from marketing the Hostess Trans Fat Products as "0 Grams of Trans Fat."

C.     An order requiring Hostess to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice.

D.     An order compelling Hostess to destroy all misleading and deceptive advertising materials and products as provided by 15 U.S.C. § 1118.

E.     An order requiring Hostess to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the CLRA, plus pre-and post-judgment interest thereon.

F.     Damages under the CLRA and MPA.

G.     Costs, expenses, and reasonable attorneys' fees.

H.     Any other and further relief the Court deems necessary, just, or proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: March 29, 2010                     Respectfully Submitted,

_GWeston_

Gregory S. Weston

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
888 Turquoise Street
San Diego, CA  92109
Telephone:  858 488 1672
Facsimile:    480 247 4553

**BECK & LEE BUSINESS TRIAL
LAWYERS**
JARED H. BECK
ELIZABETH LEE BECK
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:  305 789 0072
Facsimile:    786 664 3334

<u>**Counsel for Plaintiffs and the
Proposed Classes**</u>

Class Action Complaint for Violations of The Lanham Act, Unfair Competition Law,
False Advertising Law, Consumer Legal Remedies Act, and Missouri Merchandise
Practices Act

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10- 2303 CBM (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Hostess Brands, Inc.
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Eileen Peviani and Victor Guttmann, on behalf of themselves and all others similarly situated,

PLAINTIFF(S)

v.

Hostess Brands, Inc.

DEFENDANT(S).

CASE NUMBER

CV 10-2303 CBM (VBKx)

**SUMMONS**

TO:   DEFENDANT(S): Hostess Brands, Inc.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Gregory S. Weston_____, whose address is 888 Turquoise Street, San Diego, California, 92109_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __3-30-10__

By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)

**SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Eileen Peviani and Victor Guttmann, on behalf of themselves and all others similarly situated, | Hostess Brands, Inc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Gregory S. Weston, Jack Fitzgerald: The Weston Firm, 888 Turquoise St, San Diego, CA 92109, (858) 488-1672. Jared H. Beck, Elizabeth Lee Beck, Beck & Lee Business Trial Lawyers, 28 W Flagler St, Miami, FL 33130 (305) 789-0072. | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ To be determined at trial.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV 10-2303 CBM (VBKx)**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Alameda, Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Wilmington, DE |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, Alameda | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date March 30, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |