JS-6

FILED
CLERK, U.S. DISTRICT COURT

NOV 3, 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN PEVIANI ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> HOSTESS BRANDS, INC. ET AL., <br><br> Defendants. | No. CV 10-2303 CBM (VBKx) <br><br> ORDER: <br> (1) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND <br> (2) GRANTING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE |

The matters before the Court are (1) Defendants Hostess Brands, Inc.'s, Interstate Brands Corporation's, and IBC Sales Corporation's (collectively, "Defendants") "Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim for Relief" ("Motion to Dismiss"); and (2) "Request for Judicial Notice in Support of Defendants' Notice of Motion and Motion to Dismiss First Amended Complaint and Each Claim Thereof" ("Request for Judicial Notice"). [Doc. Nos. 19, 21].

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1367 and 15 U.S.C. § 1121.

## FACTUAL AND PROCEDURAL BACKGROUND

In this putative class action, Plaintiff Victor Guttmann ("Plaintiff") alleges that Defendants use misleading, deceptive, and fraudulent misstatements and omissions to market six (6) varieties of baked-goods products under the label "Hostess 100 Calorie Packs."[1] (First Amended Complaint ("First. Am. Compl.") at ¶¶ 4-7, 61.) In particular, Plaintiff alleges that Defendants market Hostess 100 Calorie Packs as containing "0 Grams of Trans Fat," even though such products contain partially hydrogenated oils ("PVHO"). (*Id.* at ¶¶ 5, 61.)

Plaintiff alleges that artificial trans fat is manufactured through a process of partial hydrogenation that results in the production of PVHO. (*Id.* at ¶¶ 24, 25.) Although PHVO was once touted as a "wonder product," he alleges that it is now known to have a detrimental impact on human health and has been attributed to numerous health conditions, including heart disease, diabetes, cancer, obesity, liver dysfunction, Alzheimer's disease, and female infertility. (*Id.* at ¶¶ 27, 30, 43, 46; Plaintiff's Opposition to Defendant Hostess Brands, Inc.'s Motion to Dismiss ("Pl.'s Opp'n") at 1:9-12.) Plaintiff further alleges that Hostess 100 Calorie Packs therefore contain "dangerous levels of artificial trans fat" because there is no safe level of artificial trans fat intake. (First Am. Compl. at ¶¶ 5, 53.)

Plaintiff alleges that he purchased Hostess 100 Calorie Packs at grocery and convenience stores in California beginning in approximately January 2007. (*Id.* at ¶¶ 15-16.) He further alleges that he read and relied on Defendants' representation that Hostess 100 Calorie Packs contained "0 Grams of Trans Fat" in deciding to purchase these products. (*Id.* at ¶ 20.) Plaintiff also alleges that, absent Defendants' misstatements and omissions, he and other class members would not have purchased Hostess 100 Calorie Packs. (*Id.* at ¶ 7.)

---

[1] The six (6) varieties of Hostess 100 Calorie Packs include the following products: Cinnamon Streusel Coffee Cakes, Twinkie Bites Golden Sponge Cake with Creamy Filling, Chocolate Cake with Creamy Filling, Lemon Golden Cake with Creamy Filling, Strawberry Cake with Cream Cheese Icing and Creamy Filling, and Carrot Cake with Cream Cheese Icing and Creamy Filling. (First Amended Complaint at ¶ 4.)

On March 30, 2010, Plaintiff and Eileen Peviani filed a Complaint against Hostess Brands, Inc. ("Hostess"). [Doc. No. 1.] On May 6, 2010, Hostess filed a Motion to Dismiss the Complaint, [Doc. No. 9], and a Request for Judicial Notice. [Doc. No. 12.] Plaintiff and Eileen Peviani thereafter filed a First Amended Complaint on May 26, 2010, [Doc. No. 16], alleging the following five causes of action against Hostess, Interstate Brands Corporation, and IBC Sales Corporation: (1) false advertising in violation of the Lanham Act; (2) violations of the California Unfair Competition Law ("UCL"); (3) violations of the California False Advertising Law ("FAL"); (4) violations of the California Consumer Legal Remedies Act ("CLRA"); and (5) violations of the Missouri Merchandise Practices Act ("MMPA"). (First Am. Compl. at ¶¶ 73-109.)

Plaintiff brings this action on behalf of himself and two classes: (1) for restitution and damages on behalf of all persons "who purchased, on or after January 1, 2007, one or more of the Hostess [100 Calorie Packs] in the United States for their own use rather than resale or distribution"; and (2) for injunctive relief on behalf of all persons "who commonly purchase or are in the market for one or more Hostess [100 Calorie Packs] in the United States for their own use rather than resale or distribution." (*Id.* at ¶ 62.)

On June 23, 2010, Defendants filed the instant Motion to Dismiss and a Request for Judicial Notice. [Doc. Nos. 19, 21.] An opposition and reply to the Motion to Dismiss were filed thereto.[2] [Doc. Nos. 23, 26.] Plaintiff Eileen Peviani voluntarily dismissed all of her claims, without prejudice, as against all Defendants on August 26, 2010.[3] [Doc. No. 35.]

---

[2] Following the July 29, 2010 hearing, Defendants continued to file documents concerning the Motion to Dismiss without leave from the Court. [Docs. No. 41, 48.] Either party's failure to comply with the Local Rules, the Court's Standing Order, or the Court's orders may result in the imposition of sanctions. *See, e.g.,* L.R. 7-10.

[3] The Court therefore declines to address Defendants' argument that Eileen Peviani lacks standing because it is moot.

## LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court, viewing all allegations in the complaint in the light most favorable to the plaintiff, must decide if the plaintiff alleges enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). In other words, courts must review the complaint to determine: (1) if it alleges genuine facts, rather than mere legal conclusions; (2) if the facts alleged (assumed to be true), as well as the reasonable inferences drawn therefrom, establish a claim; and (3) if relief based upon the facts alleged is plausible. *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). "For a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

If a district court grants a motion to dismiss, it must also decide whether to permit a plaintiff to amend the pleading. Although the policy favoring amendments must be applied with "extreme liberality," *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990), leave to amend is not required when "the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix,* 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

### I. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of numerous documents: (1) the Food Labeling Guide issued by the United States Food and Drug Administration ("FDA"); (2) product labels for the six (6) varieties of Hostess 100 Calorie Packs at issue; (3) an Order Granting Defendant's Motion to Dismiss with Prejudice in *Rosen v. Unilever United States, Inc.*, Case No. C09-02563 (N.D. Cal. May 3, 2010) (Ware, J.); (4) an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss in *Yumul v. Smart Balance, Inc.*, Case No. CV10-00927 (C.D. Cal. May 24, 2010) (Morrow, J.); and (5) the declaration of J. Randall Vance, Senior Vice President of Finance and Treasurer at Hostess, in Support of Defendant Hostess Brands, Inc.'s Motion to Dismiss filed May 6, 2010 ("Vance Declaration").

Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." FED. R. EVID. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Thus, a court "may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the Pacer system via the internet." *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1138 (E.D. Cal. 2009) (Wanger, J.); *see also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).

#### a. The FDA Food Labeling Guide

Defendants request that the Court take judicial notice of the FDA Food Labeling Guide, which is a regulatory guideline disseminated by the FDA in order to provide nonbinding guidance regarding requirements for trans fat labeling.

(Request for Judicial Notice ("Req. for Judicial Notice") at 2:4-6, Ex. A (Ex. A thereto).) The Court finds that the FDA Food Labeling Guide is a judicially noticeable document. *See Ries v. Hornell Brewing Co.*, 2010 U.S. Dist. LEXIS 86384, *16 n.3 (N.D. Cal. July 23, 2010) (Fogel, J.) (taking judicial notice of a document on the FDA's website); *see also Hansen Bev. Co. v. Innovation Ventures, LLC*, 2009 U.S. Dist. LEXIS 127605, *6-7 (S.D. Cal. Dec. 23, 2009) (Gonzalez, J) (explaining that information on government agency websites is often judicially noticeable).

### b. *Hostess 100 Calorie Pack Product Labels*

Defendants also request that the Court take judicial notice of the product labels for the six (6) Hostess 100 Calorie Pack products that are the subject of Plaintiffs' First Amended Complaint. (Req. for Judicial Notice at 2:4-6, Ex. A (Ex. B thereto).) Although the photocopied product labels submitted by Defendants show additional product labeling, the images are even more illegible than those attached to Plaintiffs' First Amended Complaint. In some cases, the names and descriptions of the products on the front of the packaging are unreadable, and for most of the copies, the nutritional labeling on the back of the packaging is similarly unreadable. The Court therefore denies Defendants' request for judicial notice of the Hostess 100 Calorie Pack product labels. The Court notes, however, that it does not need to rely on the product labels to decide the Motion to Dismiss.

### c. *District Court Decisions*

In addition, Defendants request that the Court take judicial notice of two district court decisions: (1) an Order Granting Defendant's Motion to Dismiss with Prejudice in *Rosen v. Unilever United States, Inc.*, Case No. C09-02563 (N.D. Cal. May 3, 2010) (Ware, J.); and (2) an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss in *Yumul v. Smart Balance, Inc.*, Case No. CV10-00927 (C.D. Cal. May 24, 2010) (Morrow, J.). (*Id.* at 2:4-6, 2:10-

19, Exs. A (Ex. C thereto), C.) Although the Court finds that the decisions in *Rosen* and *Yumul* are judicially noticeable, the Court notes that these decisions have no binding authority on this Court. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001) (explaining that "the binding authority principle applies only to appellate decisions, and not to trial court decisions").

### d. The Vance Declaration

Finally, Defendants request that the Court take judicial notice of the Vance Declaration. (Req. for Judicial Notice at 2:7-9, Ex. B.) For the reasons set forth above, the Court takes judicial notice of this document; however, Defendants should have re-filed the Vance Declaration with the Motion to Dismiss rather than require the Court to take judicial notice of an additional document.

## II. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY FEDERAL LAW

### a. Statutory Framework

The Federal Food, Drug, and Cosmetic Act ("FDCA") sets forth a comprehensive federal scheme for the regulation of food. *See Rosen v. Unilever United States, Inc.*, 2010 U.S. Dist. LEXIS 43797, *6-7 (N.D. Cal. May 3, 2010) (Ware, J.). In 1990, Congress amended the FDCA, through the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. §§ 341, *et seq.*, "to 'clarify and . . . strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in food.'" *Chacanaca v. Quaker Oats Co.*, 2010 U.S. Dist. LEXIS 111981, *7-8 (N.D. Cal. Oct. 14, 2010) (Seeborg, J.) (quoting H.R. Rep. No. 101-158, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337). In accordance with the NLEA, the FDA has promulgated regulations with respect to food labels. *See, e.g.*, 21 C.F.R. §§ 101.1-101.18.

Generally, a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). Two sections of the NLEA, 21 U.S.C. §§

343(q) and (r), directly apply to whether the use of the phrase "0 Grams of Trans Fat" outside of a Nutrition Facts Panel constitutes false or misleading branding.

Section 343(q) enumerates the requirements for the labeling of nutrition information, which typically appear in the Nutrition Facts panel. 21 U.S.C. § 343(q). The nutrition information labeling must include, among other things, the amount of saturated fat and total fat in each serving size. 21 U.S.C. § 343(q)(1)(D). The accompanying regulation requires that the trans fat content in each serving must also be expressed on nutrition information labels. 21 C.F.R. § 101.9(c)(2)(ii). The regulation further requires that, if a serving of trans fat "contains less than 0.5 gram, the content, when declared, shall be expressed as zero." *Id.*

Meanwhile, section 343(r) governs (1) the labeling of nutrient content; and (2) the relationship of such nutrients to diseases or health-related conditions. 21 U.S.C. § 343(r). An accompanying regulation applies to express nutrient content claims, or those "direct statement[s] about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). Express nutrient content claims may be included in labeling so long as "[t]he statement does not in any way implicitly characterize the level of the nutrient in the food and is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3). Finally, "[a] statement of the type required by [section 343(q)] that appears as part of the nutrition information required or permitted by such paragraph is not a claim which is subject to [section 343(r)]." 21 U.S.C. § 343(r)(1).

### b. *Federal Preemption Doctrine*

The Supremacy Clause of the Constitution empowers Congress to make laws that preempt state law. *Von Saher v. Norton Simon Museum of Art in Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law

actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (quoting *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000), abrogated on other grounds). "Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are within the states' historic police powers and thus subject to the presumption against preemption." *Hansen*, 2009 U.S. Dist. LEXIS 127605, at *32; *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Consumer protection laws, such as the UCL, FAL, and CRLA, are nonetheless preempted if they seek to impose requirements that contravene the requirements set forth by federal law. *See Wyeth v. Levine*, __, U.S. __, 129 S.Ct. 1187, 1200 (2009); *see also Chacanaca*, 2010 U.S. Dist. LEXIS 111981, at *15. Even "[i]f a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Group, Inc. v. Good*, __ U.S. __, 129 S.Ct. 538, 543 (2008).

The NLEA expressly preempts any state or political subdivision of a state from directly or indirectly establishing: (1) "any requirement for nutrition labeling of food . . . that is not identical to a requirement of [section 343(q)]" and (2) "any requirement respecting any claim of the type described in [section 343(r)(1)] made in the labeling of food that is not identical to the requirement of [section 343(r)]." 21 U.S.C. § 343-1(4)-(5). "'Not identical' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: [(1)] Are not imposed by or contained in the applicable provision [or regulation]; or [(2)] Differ from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4).

*c. Discussion*

Plaintiff alleges that Defendants' representation that the Hostess 100 Calorie Packs contain "0 Grams of Trans Fat" is deceptive and misleading because the products contain PVHO. (First Am. Compl. at ¶¶ 5, 6, 61.) Plaintiff argues that, "while disclosures within the Nutrition Facts panel are not subject to a 'false and misleading' standard, the same statement, made elsewhere, is a nutrient claim subject to the regulations, including the prohibition on false and misleading statements under § 101.13(i)(3)." (Pls.' Opp'n at 15:24-16:1.) Plaintiff further contends that the FDA cannot provide monetary relief for their claims. (*Id.* at 22:11-12.) Defendants, on the other hand, contend that Plaintiff's state law claims are preempted because the FDA has already regulated the type of representations that must be made with respect to the disclosure of trans fat. (Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim for Relief ("Defs.' Mem.") at 17:3-7.)

Defendants' use of the phrase "0 Grams of Trans Fat" outside the Nutrition Facts Panel constitutes an express nutrient content claim. Defendants may make an express nutrient content claim only insofar as "[t]he statement does not in any way implicitly characterize the level of the nutrient in the food and is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which no disclaimer is required." *See* 21 C.F.R. § 101.13(i)(3).

With respect to relative claims, such as "more" or "less," federal law permits a purveyor to rely on the actual or rounded values as a source for comparison, as long as the label is internally consistent. *See* 21 C.F.R. § 101.13(j)(1)(ii)(B). With respect to absolute claims, the FDA has declined to promulgate a regulation as to whether the actual or rounded value must be used in nutrition labeling. *Chacanaca*, 2010 U.S. Dist. LEXIS 111981, at *21-22. Because "the difference between actual and rounded values are 'nutritionally

insignificant'. . . [the FDA] has urged that the use of *either* value relays identical information." *Id.* at *22 (emphasis in original).

Plaintiff does not claim that Defendants' use of the phrase "0 Grams of Trans Fat" in the Nutrition Facts Panel is false or misleading; therefore, Defendant's use of this same phrase elsewhere on the product label cannot be false or misleading. *See id.* at 22-23 (explaining that "if 'nutritionally insignificant amounts' of less than 0.5 gram trans fat means the same thing, according to [FDA] regulations, as '0 grams,' then the use of the latter language in an express nutrient content claim would *not* be misleading within the meaning of *section (r)* or any of its regulations.") (emphasis in original). The FDA regulations explicitly define the term "0 Grams of Trans Fat" and the NLEA expressly prohibits any state from directly or indirectly establishing any requirement that is not identical to the relevant federal requirements. 21 U.S.C. § 343-1(a)(5). Plaintiff's claims seek to enjoin the use of the very term permitted by the NLEA and its accompanying regulations. Plaintiff's claims must therefore fail because they would necessarily impose a state-law obligation for trans fat disclosure that is not required by federal law. *See Chacanaca*, 2010 U.S. Dist. LEXIS 111981, at *23 (dismissing a plaintiff's state law claims regarding use of the phrase "0 Grams Trans Fat" on the grounds of preemption); *see also Red v. The Kroger Co.*, No. CV10-1025 DMG (MANx) (C.D. Cal. Sept. 2, 2010) (Gee, J.) (finding that the plaintiff's state law claims regarding the defendant's use of the phrase "0g Trans Fat per serving" were expressly preempted by federal law). Accordingly, the Court finds that Plaintiff's state law claims are preempted by federal law.[4]

### III. PLAINTIFF LACKS STANDING UNDER THE LANHAM ACT

Standing is a jurisdictional prerequisite to bringing an action in federal court. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit

---

[4] The Court declines to address Defendants' remaining arguments, which relate to standing under the MMPA, Rule 12(b)(2) dismissal of all claims as to Hostess, and Rule 12(b)(6) dismissal as to all claims, because they are moot.

brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court there-fore lacks subject matter jurisdiction over the suit."). Prior to proceeding on the merits of an action, a district court must therefore be satisfied that it has subject matter jurisdiction. *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) (explaining that "[s]tanding is a threshold matter central to our subject matter jurisdiction.").

Defendants argue that Plaintiff lacks standing because he is a consumer, not a competitor. (Defs.' Mem. at 22:24-27.) Plaintiff, meanwhile, argues that he is entitled to assert a Lanham Act claim because he seeks only injunctive relief pursuant to 15 U.S.C. § 1116. (Pls.' Opp'n at 25:4-5.)

The Lanham Act prohibits the use of false descriptions and false representations in connection with the sale or advertising of any goods or services. 15 U.S.C. § 1125. To establish standing under the "false advertising" prong of the Lanham Act, "a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (affirming dismissal of Lanham Act claim because the parties were not competitors); *see also Barrus v. Sylvania*, 55 F.3d 468, 469-70 (9th Cir. 1995) (affirming dismissal of Lanham Act claim where "[a]s consumers, [the plaintiffs] have alleged neither commercial injury nor competitive injury."). Thus, "[f]or a plaintiff to have standing, the parties must be competitors in the sense that they 'vie for the same dollars from the same consumer group,' and the alleged misrepresentation must at least theoretically effect a diversion of business from the plaintiff to the defendant." *Trafficschool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1070 (C.D. Cal. 2008) (Anderson, J.) (quoting *Kournikova v. Gen. Media Commnc'ns, Inc.*, 278 F. Supp. 2d 1111, 1117-18 (C.D. Cal. 2003) (Feess, J.)).

Regardless of whether Plaintiff seeks equitable relief or damages, he must demonstrate standing to assert a claim in federal court. *See Bates*, 511 F.3d at 985. Here, Plaintiff alleges that he "purchased the [Hostess 100 Calorie Packs] for personal, family or household purposes." (First Am. Compl. at ¶ 108.) He also seeks injunctive relief on behalf of class members who purchase Hostess 100 Calorie Packs "for their own use rather than resale or distribution." (*Id.* at ¶ 62.) Plaintiff, by his own admission, is a consumer, not a competitor. Because Plaintiff alleges neither commercial nor competitive injury, he is precluded from asserting a false advertising claim under the Lanham Act. The Court therefore dismisses Plaintiff's Lanham Act claim with prejudice due to lack of standing.

## CONCLUSION

Based on the foregoing, the Court hereby:

1. **GRANTS** Defendants' Motion to Dismiss without leave to amend; and
2. **GRANTS** Defendants' Request for Judicial Notice as to all documents **except** the product labels for the six (6) Hostess 100 Calorie Packs.

**IT IS SO ORDERED.**

DATED: November 3, 2010     By _____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE